Filed 1/27/22  P. v. Chavez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081126 |
| Plaintiff and Respondent, | |
| v. | (Stanislaus Super. Ct. No. 1040531) |
| RAMON SALVADOR CHAVEZ, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Detjen, J. and Franson, J.

## INTRODUCTION

Around 10:00 p.m. on August 31, 2000, appellant Ramon Salvador Chavez entered Corona Liquors on Crows Landing Road in Modesto and shot and killed Gurmit Singh Bahia, the proprietor. He pleaded guilty to first degree premediated murder and admitted the felony-murder special circumstance, and the People agreed not to pursue the death penalty. He was sentenced to life in prison without the possibility of parole for special circumstance murder, plus 37 years for other offenses and enhancements.

Appellant filed a petition for relief, in pro. per., pursuant to Penal Code section 1170.95,[1] and alleged his murder conviction had to be vacated because he was improperly convicted based on the felony-murder rule or the natural and probable consequences doctrine. The superior court appointed counsel for appellant, found his petition stated a prima facie case for relief, issued an order to show cause, set the matter for an evidentiary hearing, and the parties filed additional briefing. After the hearing, the court denied the petition because it found appellant was the actual killer and ineligible for relief.

In this appeal from the court's order, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has also filed a supplemental brief. We affirm.

## FACTS[2]

Ovana Robles (Robles), appellant's former girlfriend, testified she was living with appellant at a motel in Modesto in 2000. Shortly before the murder, appellant and Robles

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] The following facts are from the certified copy of the reporter's transcript of the grand jury hearing that returned the indictment against appellant. As will be explained below, after the court issued the order to show cause, the People filed the complete certified copy of the reporter's transcript from the grand jury hearing as an exhibit in support of its opposition. At the hearing, appellant did not present any evidence and did

2.

pleaded guilty to committing a robbery in Turlock.  On the day of the murder, they were in their motel room, and she saw defendant sanding and shaving a handgun.  Robles testified something was wrong with the gun and the clip was missing.

Robles testified that later that night, they went to eat at a taco truck that was parked in front of Corona Liquors.  Appellant told Robles he needed money and wanted to do a "lick," which was slang for a robbery; he indicated Corona Liquors was the target.  Robles testified they argued because she refused to get involved and told him that he should not commit anymore robberies.  She reminded appellant that they had just pleaded guilty to robbery and were supposed to turn themselves in.  Appellant said he was going to do it anyway.  Robles got angry and left; she knew he was going to go forward with the robbery.

A minor was working at the taco truck that was parked in front of Corona Liquors that night.  The minor saw a man and woman there, later identified as appellant and Robles.  They ordered food from the truck, sat at a nearby table, and talked.  The minor testified that when they stopped talking, Robles left, and appellant put something over his head and his face.  The minor saw appellant walk into the liquor store and pull out a gun.  Appellant moved back and forth near the cash register with the gun.  The minor heard one gunshot.  Appellant ran out of the store, in the same direction that Robles went when she left the area.

Appellant's fingerprint was found on the table next to the taco truck.

Detective Mark Copeland, the investigating officer, obtained the liquor store's security videotape.  The video showed appellant enter the store and yell at Mr. Bahia, " 'Give me the fucking money.' "  Appellant waived a gun and fired one shot at Mr. Bahia, who was standing near the cash register.  Mr. Bahia gestured toward appellant and made statements in Punjabi that were later translated as:  " 'You killed me.  You killed

_____

not object to the transcript.  The court relied on the transcript when it denied relief on the merits.

3.

me. The police are coming. The police are coming.' " Appellant hit the victim over the head, grabbed money from the cash register, and left. Mr. Bahia triggered the silent alarm before he collapsed. When officers arrived, they found Mr. Bahia on the floor; he died at the scene. One nine-millimeter cartridge case was found near his body.

Robles testified that when appellant returned to their motel room that night, he had about $100 in cash. Appellant was nervous, pacing, and started crying. Appellant said, " 'I don't know what happened. The gun went off and I shot him.' " Appellant said that he fired the gun once and "shot the guy" at the liquor store.

The pathologist testified Mr. Bahia died from a bullet wound that entered his right lateral back, went through the bottom of his right lung and liver, hit the aorta, grazed the spine, went through the bottom of the left lung, and exited through his left chest. The direction of the bullet was from right to left, back to front, and slightly downward. The bullet wound caused internal bleeding, and the victim bled to death. The victim had a second bullet wound through the back of his left arm, likely caused by the first bullet after it passed through his body.

The victim also had a laceration on the top of his head that dislodged a bone chip from his skull. It was consistent with a blow from a small blunt object, such as the butt of a gun. There was blood around the laceration, which meant the victim was still alive when he was hit on the head.

Guillermo Marin (Marin) testified that he sold appellant a nine-millimeter handgun for $200 sometime in August 2000, prior to the murder. Appellant paid Marin $160 and still owed $40, but Marin let appellant take the gun. The gun did not have a clip, but Marin gave appellant a Smith and Wesson clip as a replacement. However, it did not work on the gun. Marin testified that without the clip, a person had to load the gun with a single bullet each time he wanted to fire it.

4.

Marin saw appellant and Robles a few days after the murder, and asked appellant for the $40 he owed him for the gun. Appellant said he used the gun at a liquor store robbery, and " 'I shot that guy with that gun.' "

Marin testified he later saw appellant when they were both in jail. Appellant appeared shaken and worried about robbery and homicide charges. Marin asked what happened to the gun that he used to shoot the guy at the liquor store. Appellant said it was gone and would not be found.

## PROCEDURAL BACKGROUND

On September 11, 2000, appellant was arrested on an outstanding warrant. On October 13, 2000, appellant was arrested in jail for the murder of Mr. Bahia. On October 17, 2000, a complaint was filed that charged appellant with the murder.

**The Grand Jury Indictment**

On April 2, 2002, the grand jury heard evidence about the crimes allegedly committed by appellant, as set forth above.

On April 4, 2002, the grand jury indictment was filed in the Superior Court of Stanislaus County alleging appellant committed count 1, murder of Mr. Bahia on August 31, 2000 (§ 187, subd. (a)), with the special circumstance that he committed the murder while engaged in the commission or attempted commission of a robbery (§ 190.2, subd. (a)(17)); enhancements for being a principal and personally discharging a firearm causing death (§ 12022.53, subd. (d)) and committing the offense while on bail (§ 12022.1); and a prior strike conviction.

The indictment also alleged appellant committed count 2, robbery of Shirley Denny on June 28, 2000 (§ 211), with an enhancement for personal use of a firearm (§ 12022.53, subd. (b)); and count 3, robbery of Aziz Ahmed on April 23, 2000, with an enhancement for intentionally and personally discharging a firearm (§ 12022.53, subd. (c)).

On October 22, 2002, the court denied appellant's section 995 motion to dismiss the indictment.[3]

On December 26, 2002, the court declared a doubt as to appellant's competency pursuant to section 1368. The court suspended criminal proceedings and appointed an expert to examine appellant.

**Plea Hearing**

On March 21, 2003, the court reviewed the expert's report, found appellant was competent, and reinstated criminal proceedings. Thereafter, defense counsel advised the court that appellant was going to change his plea pursuant to an agreement with the prosecution to waive a penalty trial for the death penalty.

Appellant pleaded guilty to count 1, murder of Mr. Bahia, and admitted the special circumstance, the personal discharge and on-bail enhancements, and the prior strike conviction. He also pleaded guilty to count 2, robbery of Ms. Denny, and admitted the personal use enhancement. The parties agreed the prosecution would not pursue the death penalty and agreed to the sentence of life without the possibility of parole for count 1, special circumstance murder. The court granted the prosecution's motion to dismiss count 3 and another pending case.

The parties stipulated to a factual basis for the plea. The prosecutor stated that as to count 1, murder, if the case went to trial, the evidence would show that on August 31, 2000, appellant "entered Corona's Liquors on South Ninth Street in Stanislaus County with a [nine-millimeter] loaded handgun with the intent to rob, and shortly after entering he did shoot Gurmit Singh Bahia in the torso of his body in the course of that robbery and

---

[3] In addition to the homicide evidence, the grand jury heard testimony from Mr. Ahmed, the owner of a market in Modesto that appellant robbed on April 23, 2000. Appellant used a shotgun to threaten and intimidate him, took cash from the register, and fired a shot into the ceiling as he left. Ms. Denny, a clerk at a Modesto minimart, testified that appellant robbed the store on June 28, 2000, threatened her with a shotgun, she feared for her life, and he took cash from the register.

that directly from the injury that wound Mr. Bahia died within minutes of that shooting." As to count 2, the prosecutor stated the evidence would show that on July 5, 2000, appellant "entered a store occupied by Shirley Denny … with a handgun and did rob that store of the cash out of the register."

**Sentencing Hearing**

On May 8, 2003, this court denied appellant's petition for writ of mandate to dismiss the indictment (case No. F041830).

On May 16, 2003, the court sentenced appellant to life without the possibility of parole plus 37 years.

**Appellant's Petitions**

This court denied appellant's petitions for writ of mandate in April 2009 (case No. F057149), December 2009 (case No. F058921), October 2013 (case No. F067782) and March 2014 (cases Nos. F069001 & F069030).

**<u>SENATE BILL Nos. 1437 & 775</u>**

The instant appeal involves appellant's petition for resentencing that he filed pursuant to Senate Bill No. 1437 (2017-2018 Reg. Sess.; Senate Bill 1437), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959, italics added (*Lewis*).)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723, italics added; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

7.

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that

8.

the petitioner is ineligible for resentencing.' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 957.)

*Lewis* held that after appointing counsel, the trial court could rely on the record of conviction to determine whether the prima facie showing is made "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) The record of conviction includes a prior appellate opinion, although it will be case-specific. (*Id*. at p. 972.) The prima facie finding under section 1170.95, subdivision (c) is limited, and the court must accept the petitioner's factual allegations as true and cannot reject the allegations on credibility grounds without conducting an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at p. 971.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid*.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020-2021 Reg. Sess.; Stats. 2021, ch. 551, §1 (Senate Bill 775).) As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory *under which malice is imputed to a person based solely on that person's participation in a crime*, attempted murder under the natural and probable

consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances.  (§ 1170.95, subd. (a), italics added.)

The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner."  (§ 1170.95, subd. (b)(3).)  After appointment of counsel, the parties shall have the opportunity to submit briefing, and "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1170.95, subd. (c).)

If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so. (§ 1170.95, subd. (c).)

Senate Bill 775 also amended section 1170.95 to clarify that after the court issues the order to show cause and conducts a hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189.  (§ 1170.95, subd. (d)(3).)

> "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.  A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

10.

(§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

### APPELLANT'S SECTION 1170.95 PETITION FOR RELIEF

On or about February 2, 2019, the Superior Court of Stanislaus County marked as "received" a petition from appellant for resentencing on his murder conviction pursuant to section 1170.95. Appellant filled out a preprinted form, checked boxes, and filed supporting authorities, in pro. per., to allege the prosecution proceeded on theories of felony murder or the natural and probable consequences doctrine; he pleaded guilty to first or second degree murder in lieu of going to trial because he believed he would have been convicted pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder based on Senate Bill 1437's amendments to section 188 and 189.

Appellant did not check the box to declare that he was not the "actual killer." However, he checked the box that stated: "There has been a prior determination by a court or jury that [appellant] was not a major participant and/or did not act with reckless indifference to human life … under section 190.2(d). Therefore, I am entitled to be resentenced pursuant to §1170.95(d)(2)."[4]

---

[4] Section 190.2, subdivision (d) states: "Notwithstanding subdivision (c), every person, *not the actual killer*, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." (Italics added.)

Appellant was not charged with, and did not admit, the section 190.2, subdivision (d) special circumstance. Instead, he admitted the special circumstance in section 190.2, subdivision (a)(17)(A), that the murder was committed while he was engaged in the commission or attempted commission of a robbery and admitted the enhancement that he personally discharged a firearm causing death (§ 12022.53, subd. (d)).

**The People's Opposition**

On March 5, 2019, the People filed the initial opposition, attached a partial transcript of the grand jury hearing as an exhibit, and argued appellant failed to set forth a prima facie case for relief because he personally discharged the firearm and was the actual killer. They further argued that there had never been a prior determination that appellant was not a major participant in the murder and did not act with reckless indifference.

**The Court's Prima Facie Finding**

On April 9, 2019, the superior court stated appellant's section 1170.95 petition was "received" but not "filed" with the court, even though it was served on both the prosecutor and public defender. The court ordered appellant's petition filed on that day.

The court found appellant stated a prima facie case for relief and appointed the public defender to represent him. The court ordered the district attorney to serve the opposition on the public defender and set a briefing schedule for the public defender to file a reply.

**Appellant's Reply Brief**

On August 14, 2019, appellant, represented by the public defender, filed a reply brief to the People's previously filed opposition. Appellant argued he made a prima facie showing that he was entitled to relief pursuant to section 1170.95, and the court could not conclude otherwise without making improper factual and credibility findings. Appellant further argued he was not the actual killer, he was convicted under the felony-murder rule, and he was entitled to an evidentiary hearing. Appellant did not file any exhibits in support of his motion.

**Order to Show Cause**

On September 5, 2019, the court issued an order to show case and found appellant stated a prima facie case for relief, noted the facts were disputed, and set an evidentiary

hearing.  On September 13, 2009, the court again appointed the public defender to continue representing appellant at further proceedings.

**The People's Further Opposition**

On February 3, 2020, the People filed further opposition to appellant's petition, supported by the complete certified transcript of the grand jury proceedings, as summarized above.  The People's factual statement was based on the transcript and argued the evidence showed appellant was the actual killer and ineligible for relief pursuant to section 189, subdivision (e) and section 1170.95.[5]

**The Court's Denial of the Petition**

On February 13, 2020, the court held the scheduled evidentiary hearing on the petition.  The prosecutor and defense counsel were present.  Defense counsel did not move to introduce any evidence and did not object to the prosecution's introduction of the grand jury transcript.  The court stated:

> "Given the evidence provided by the People, specifically the grand jury transcript, the Court had previously held that a prima fascia [*sic*] case had been made by [appellant], but it could be because he filed a rather late petition.  [¶]  In any event, my tentative was that based on what I read in the pleadings, [appellant] is not eligible for vacating the sentence or vacating his conviction and resentencing him."

The prosecutor agreed that appellant was ineligible "because he's the actual killer," and asked the court to reconsider its earlier ruling that appellant had established a prima facie case.  Defense counsel replied:  "I can't argue that he's not the actual killer," but was not sure that the court could procedurally reverse its prior prima facie finding.

---

[5] Section 189, subdivision (e)(1) states that a participant in the perpetration or attempted perpetration of a felony listed in subdivision (a), in which a death occurs, is liable for murder if "[t]he person was the actual killer."

The court did not reverse its prior finding, but again held appellant was the actual killer and ineligible for relief.[6]

On April 29, 2020, appellant filed a notice of appeal.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on July 15, 2020, we invited appellant to submit additional briefing.

### Appellant's Supplemental Brief

On August 21, 2020, appellant filed a supplemental brief with this court, and asserted Senate Bill 1437 and section 1170.95 were constitutional. The superior court explained that it did not address the constitutional issues raised by the People because it denied appellant's petition on the merits. The court properly denied appellant's petition for relief because it is undisputed that he was the actual killer who fatally shot the victim. (§ 189, subd. (e)(1).)

Appellant's supplemental brief raises additional allegations that are refuted by the record of this case. He asserts the superior court denied his section 1170.95 motion "at the first stage of prima facie review." To the contrary, the court appointed counsel to represent appellant, found a prima facie case, issued an order to show cause, received additional briefs, and held a hearing on the matter. Appellant did not introduce any evidence, and the court denied relief on the merits. Appellant next asserts it was possible "the sentencing Judge relied on the natural and probable consequences doctrine in convicting Petitioner." The court did not find appellant guilty of murder. He was

---

[6] The People's opposition to appellant's petition also asserted Senate Bill 1437 was unconstitutional. Appellant disagreed in his reply brief. The court declined to reach the constitutional issue since it denied relief on the merits.

14.

indicted by a grand jury, pleaded guilty to first degree murder, and admitted the personal discharge enhancement and the special circumstance.

Appellant asserts there was no evidence the murder was committed for a criminal street gang, and the section 12022.53 firearm enhancement only applied if the crime was committed for the benefit of a gang. Appellant was not alleged to have committed, and did not admit, any gang offenses or enhancements in this case. Appellant next argues there was no evidence that he "played a direct role in killing the victim." It is undisputed that appellant was the actual killer and fatally shot the victim, and there is no evidence that anyone else was present in the market.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The court's order of October 2, 2019, denying appellant's petition for resentencing, is affirmed.